UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

STEVEN ATKINSON,

               Petitioner,                Case No. 16-cv-10564

v                Honorable Thomas L. Ludington

MDOC,

               Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

Petitioner Steven Atkinson, presently on parole supervision through the Lapeer County Parole Office in Lapeer, Michigan, was convicted by a jury in the Emmet County Circuit Court of two counts of second-degree criminal sexual conduct in violation of Mich. Comp Laws § 750.520c(1)(a). Petitioner was sentenced to three to fifteen years in prison. On February 16, 2016 Petitioner filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 contending that he was denied the effective assistance of counsel and that his lifetime tether requirement violates the Fourth and Eighth Amendments to the United States Constitution. Respondent Michigan Department of Corrections ("MDOC") has filed an answer to the petition, asserting that the claims lack merit and have been procedurally defaulted. Because Petitioner's claims are without merit, the petition will be denied.

**I.**

The following relevant facts relied upon by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).

> Defendant and KH lived together from July 2009, through defendant's conviction in March 2012. Defendant's teenage daughter, HA, and KH's two daughters, HR and MR, resided with the couple. In late November or early December 2011, the three girls reported that defendant had sexually touched MR. During this time period, MR was suffering from chronic back pain and would often climb into defendant and her mother's bed in search of a back rub. MR claimed that the inappropriate touching occurred as a result of such a massage. The girls' stories were inconsistent about dates and whether defendant had previously molested MR, and their stories changed over time. MR was inconsistent about what body parts defendant touched, where she was lying at the time, and whether defendant was actually awake during the incident. HR added her accusation of sexual touching after the fact. Following the accusations, HR and MR moved in with their father and HA also left the residence.
>
> Defense counsel's strategy was to attack the girls' credibility in order to show that they fabricated their claims against defendant in retaliation for his strict discipline. Despite the attack on the witnesses' veracity, the jury convicted defendant of sexually touching MR. [1]

*People v. Atkinson*, No. 311626, 2014 WL 129269, at *1 (Mich. Ct. App. Jan. 14, 2014). Petitioner's conviction was affirmed by the Michigan Court of Appeals. *Id.* The Michigan Supreme Court then denied Petitioner's application for leave to appeal. *People v. Atkinson*, 497 Mich. 896, 855 N.W.2d 744 (Mich. 2014).

## II.

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases: An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

---

[1] Because the victim and several witnesses were minors at the time of the crime and trial, the Court will refer to them by their initials as the Michigan Court of Appeals did to preserve their privacy. The Court will also refer to the victim's mother by her initials for the same reason.

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is contrary to Supreme Court precedent under § 2254(d)(1) if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or (2) " the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted). A state court adjudication involves an unreasonable application of federal law under § 2254(d)(1) if "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008) (internal quotation marks omitted).

"In order for a federal court to find a state court's application of [Supreme Court] precedent unreasonable, the state court's decision must have been more than incorrect or erroneous," but rather "must have been objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotations and citations omitted):

> [E]ven clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations, quotation marks, and alterations omitted). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

"Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). Rather, the pertinent question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) (internal quotation marks omitted).

In his § 2254 petition, Petitioner Atkinson seeks a writ of habeas corpus on two separate grounds. First, he argues that he was denied the effective assistance of counsel because his trial counsel failed to interview necessary witnesses with exculpatory testimony and failed to play a forensic protocol DVD, which highlighted inconsistencies in MR's allegations. Petitioner also argues that imposition of lifelong GPS monitoring infringes upon his constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment and his right to not be subjected to cruel and unusual punishment under the Eight Amendment. Each argument will be addressed in turn.

**A.**

Petitioner first contends that he was denied the effective assistance of trial counsel. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test for determining whether a habeas petitioner's counsel was ineffective. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Id.* at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the

defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial. *Id*.

With respect to the performance prong, a petitioner must identify acts that are "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The Court's scrutiny of counsel's performance is viewed through a highly deferential lens. *Id*. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. And it is the petitioner who bears the burden of overcoming the presumption that his counsel's actions constituted sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

Furthermore, on habeas review, "the question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. at 123 (internal quotations omitted). Consequently, the § 2254(d)(1) standard applies a "doubly deferential judicial review" to a *Strickland* claim brought by a habeas petitioner. *Id.* Because of this doubly deferential standard, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied

*Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. at 105. A reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

**i.**

Petitioner first argues that trial counsel, Attorney Kur, was ineffective for failing to present to the jury the video recording of MR's interview with a child protective services worker and a police officer. Petitioner contends that the videotape could have been used to impeach MR's credibility and to establish that she had been coached by the social worker or the police officer to incriminate the petitioner.

> The Michigan Court of Appeals rejected the claim as follows:
>
> Following the report of sexual touching, a Child Protective Services Worker, Melissa Reedy, travelled to MR's school to interview her. Reedy was joined by Emmet County Sheriff's Deputy Matthew Leirstein. Reedy conducted the interview and Leirstein asked follow-up questions. The interview was video recorded. [Defense] Attorney Kur questioned Reedy at length during cross-examination regarding inconsistent statements made by MR during the interview and leading questions asked by Leirstein. Reedy did not recall all statements referenced by Kur and admitted that she did not watch the recorded interview in preparation for trial. Midway through the cross-examination, Kur stated, "I guess to refresh the witness's recollection, I would like to play that tape at some point." While the DVD recording was in the courtroom, the equipment to play it was not connected. Kur therefore indicated that she would "wait until we take a break." At the end of the cross-examination, Kur indicated that she did not have the necessary equipment present and asserted, "I can use it at a different time, so rather than waste time, let's do it tomorrow, unless you want to do it." The court proceeded with the prosecutor's redirect examination and left the video issue until later. Kur did not return to the issue the following day.
>
> ******************************************************************
> We first note that the record does not support that Kur made an actual strategic decision to refrain from presenting the videotaped interview at trial. At the time, Kur's decision was apparently based on the lack of audiovisual equipment. At the *Ginther* hearing, Kur initially asserted that the video became unnecessary as the witness testimony revealed all pertinent information. She then changed gears and

stated her belief that the video would have been inadmissible. Despite the lack of strategy in this regard, we discern no prejudice to defendant. As noted by the circuit court, the inconsistencies between MR's trial testimony and her statements during her interview, and between her various answers given during the interview, were covered at length at trial. Both Leirstein and Reedy testified that MR vacillated between claiming defendant was asleep and snoring, half asleep and awake during the incident. Even HR and HA testified that MR told them that defendant was half asleep or potentially asleep. Therefore, the jury was on guard that MR had provided inconsistent statements directly impacting defendant's ability to form the necessary criminal intent for the offense.

The testimony at trial also sufficiently revealed MR's inconsistencies relating to the date and details of the incident and whether this was an isolated event. At trial, MR, HR and HA could not pinpoint the actual dates between November 28 and December 2, 2011, on which the touching occurred and reports were made to various individuals. MR added new details at trial, including that defendant had touched her breast. Leirstein identified those details at trial, however, and informed the jury that MR had not mentioned them during her interview. Testimony revealed that MR changed her story from the interview that she was lying between defendant and KH on the bed to asserting at trial that defendant called her over for a hug and she lay on the edge of the bed next to him. And just as during her interview, MR inconsistently testified on the stand that defendant had touched her four, five, or six times in the past.²

While defendant argues that the actual video would have been the best evidence of the witnesses' incredibility, the failure to present the best evidence is not the test to determine if counsel's performance was constitutionally deficient. The decision regarding what evidence to present is a matter of trial strategy. The failure to present evidence only amounts to deficient performance if the defendant is denied a substantial defense. Defendant does not contend that he was deprived of a substantial defense; indeed, Kur did present the defense that MR was incredible because her story changed during the interview and between the interview and trial. That counsel's chosen method to prove that defense was unsuccessful is not grounds for finding her performance constitutionally deficient. And as noted by the circuit court, the video likely would have shown MR in an emotional state, something that could have further damaged the defense.

Moreover, defendant suffered no prejudice as a result of Kur's indication before the jury that she intended to present the video. Kur's stated intent at trial for presenting the video was to refresh Reedy's memory. The jury was not

---

² Defendant makes much of MR's inability to clearly state whether she was seeing a doctor about her chronic back pain. MR's inconsistency in this regard had no bearing on the issues before the jury. Defendant also argues that the video would have shown MR smiling as she left the interview, evidencing that she was lying. The circuit court and this Court could only speculate about how the jury would have viewed that evidence and could not determine that this piece of evidence would have affected the outcome of the trial. (Footnote original).

- 7 -

> necessarily left with the impression that Kur decided not to present the video because it contained information harmful to the defense. Rather, the jury could have believed that Kur no longer saw the need to refresh Reedy's memory. Equally true, the jury may have perceived that the court still had no equipment to play the video. That defendant was prejudiced in this regard is pure speculation.
>
> Defendant also was not prejudiced by the absence of the video evidence that Leirstein and Reedy asked certain leading questions during the interview. Defendant claims that the video would have shown that Reedy and Leirstein suggested that defendant touched MR six times in total and that he touched her on her "pubic region." MR then parroted the term "pubic region" at trial. Whether Reedy or Leirstein planted the idea in MR that she had been molested six times is unimportant as MR actually provided highly inconsistent testimony on that issue at trial. Moreover, Leirstein admitted at trial that he did not use child forensic interviewing techniques when speaking to MR. Kur also elicited testimony from Reedy that Leirstein's statements would constitute "leading questions" and could be viewed as a "big taint" to the interview of a young child. And the evidence revealed that MR told HR and HA that defendant touched her on the buttocks and on her front groin area before her forensic interview. Therefore, even if Reedy and Leirstein suggested the term "pubic region," that term was consistent with MR's story. Absent any prejudice to defendant, the circuit court acted within its discretion in denying defendant's motion for a new trial.

*People v. Atkinson*, No. 311626, 2014 WL 129269, at *2, 4-5 (internal citations omitted).

As found by the Michigan Court of Appeals, Petitioner is not entitled to relief on his claim for several reasons. First, although his trial counsel did not introduce the videotaped interview, she did cross-examine MR and the other witnesses extensively about the inconsistencies in MR's stories and also elicited admissions from Reedy and Lairsten that MR had been asked leading questions by Lairsten. It was perfectly reasonable for trial counsel to use the witnesses' trial testimony and prior statements to impeach MR and the other witnesses through cross examination. Her failure to use the actual videotape thus "does not demonstrate deficiency." *See Cleveland v. Bradshaw*, 65 F. Supp. 3d 499, 540 (N.D. Ohio 2014). Petitioner also cannot demonstrate prejudice from defense counsel's failure to play the videotaped interview because MR's "inconsistencies were detailed and well known to the jury." *People v. Atkinson*, 2014 WL 129269, at *4-5. *See also Welsh v. Lafler*, 444 F. App'x. 844, 852 (6th Cir.

2011) (defense counsel's failure to admit into evidence in prosecution for criminal sexual conduct audiotape of the petitioner's conversation with the victim at county fair, during which the victim stated that the petitioner did not touch him inappropriately, did not constitute ineffective assistance of counsel, given that the witness admitted his prior inconsistent statements during trial testimony); *Wolfe v. Bock,* 412 F. Supp. 2d 657, 676-77 (E.D. Mich. 2006), *aff'd*, 253 F. App'x. 526 (6th Cir. 2007) (trial counsel's failure to introduce tape recording of informant's statement to police did not prejudice the petitioner, when the informant was impeached with other evidence at trial).

Furthermore, as noted by both the trial judge and the Michigan Court of Appeals, the videotape would have shown MR in an emotional state accusing Petitioner of sexually molesting her. The videotape would have in some ways actually corroborated her testimony. Because this evidence would have been potentially damaging to Petitioner, his trial counsel was not ineffective for failing to use it to impeach MR. *See e.g. U.S. v. Munoz,* 605 F. 3d 359, 382 (6th Cir. 2010). This claim is therefore without merit

**ii.**

Petitioner also argues that his trial counsel was ineffective for failing to investigate and call certain witnesses to testify, including KH (MR and HR's mother), Theresa Atkinson (Petitioner's mother), and Teri Nestor (a friend of KH). The Michigan Court of Appeals rejected this claim as follows:

> We discern no error in Kur's decision not to call defendant's mother as a witness. Defendant argues that his mother would have testified about HA's reputation for causing trouble and that HA told her "[s]omething big's gonna go down," shortly before MR's accusations were reported. Kur did speak to defendant's mother while preparing the defense. Kur found both of defendant's parents to be "very emotional," and described them as "extremely volatile witnesses, volatile people, angry." Defendant's siblings described their parents as "[h]ot headed, maybe not a good idea to call them as witnesses." As evidence that Kur's impressions were

> accurate, defendant's father became angry when the trial judge asked him to step into the hallway because his cell phone repeatedly made noises during the trial. Defendant's father instead threw his phone into the hallway and returned to his seat "making all kinds of face and gestures," requiring the court to threaten him with contempt. In any event, the evidence about HA's reputation actually reached the jury. KH testified that HA is a "compulsive liar" and became a serious discipline problem after her 18th birthday.
>
> In relation to KH, defendant claims that, had she been called as a defense witness, she could have testified further regarding the family dynamics, providing support for the defense theory that MR, HR and HA fabricated the accusations against defendant. Kur spoke with KH several times before trial and considered the idea of calling her as a defense witness. During her testimony as a prosecution witness, KH clearly expressed her belief that the three girls were fabricating their claims against defendant. KH testified regarding HR's motive to fabricate the accusations and the sway she held over MR to convince her to go along with the story. KH further informed the jury that prior to MR's current accusations, MR had always been very affectionate and had a good relationship with defendant. Kur focused on this information during opening statement and closing argument to ensure the jury understood its import. As noted by Kur at the posttrial hearing, she "got everything out of [KH] that we needed to get, and the Prosecutor did, too." Accordingly, counsel reasonably deemed it unnecessary to recall her.
>
> Defendant argues that Nestor could have corroborated KH's testimony regarding HR's ability to manipulate MR. Kur did not recall speaking with Nestor before trial. KH testified that she sent Kur an email explaining Nestor's potential testimony, and that Kur told her that she did not think Nestor's information was relevant. It is evident from the record that the failure to call Nestor, as well as defendant's mother and KH, did not deprive defendant of a substantial defense. As the circuit court found, the defense was "supported with considerable evidence" at trial. Additional testimony by witnesses presumed friendly toward defendant was unlikely to change the outcome of the trial. And as Kur explained, she did not think it would be an effective strategy "to parade relative after relative in front of a jury to testify to the exact same thing over and over again" because "sometimes it has the reverse affect [sic] with the jury." As the circuit court noted, these decisions composed "a classic example of trial strategy which is presumed to have been reasonable."

*People v. Atkinson*, 2014 WL 129269, at * 6.

In the present case, Petitioner's trial counsel extensively impeached MR's credibility at trial through her cross-examination of MR and other witnesses, including KH. Undisclosed impeachment evidence is considered cumulative "when the witness has already been sufficiently

impeached at trial*.*" *Davis v. Booker,* 589 F. 3d 302, 309 (6th Cir. 2009) (*quoting Brown v. Smith*, 551 F. 3d 424, 433-34 (6th Cir. 2008)). Because MR's credibility had already been impeached, Petitioner was not prejudiced by his trial counsel's decision not to impeach MR with cumulative impeachment evidence. *Id.* Petitioner therefore is not entitled to relief on his first claim.

### B.

Petitioner next contends that the trial judge violated his Fourth and Eighth Amendment rights when he imposed lifetime electronic monitoring upon Petitioner as part of his sentence. Under Michigan Compiled Laws § 750.520n(1), a person who is convicted of first or second-degree criminal sexual conduct against a person under the age of 13 must be placed on lifetime electronic monitoring. In response to Petitioner's argument, Respondent argues that this claim is procedurally defaulted because Petitioner failed to object at trial.

Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Instead, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir.2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In the present case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's second claim.

Petitioner's claim that the imposition of lifetime electronic monitoring violates his Fourth Amendment right to be free from an unreasonable search and seizure will be addressed first. In

*Grady v. North Carolina,* 135 S. Ct. 1368, 1371 (2015), the United States Supreme Court held that North Carolina's satellite based monitoring system for tracking the movement of convicted sex offenders amounts to a search within the meaning of the Fourth Amendment. The Supreme Court, however, declined to review the constitutionality of North Carolina's system, observing that the Fourth Amendment prohibits only unreasonable searches and seizures. *Id.* Noting that the North Carolina Supreme Court did not determine whether the search was reasonable in its initial review of the defendant's case, the United States Supreme Court declined to address that issue, and remanded the case to the North Carolina Supreme Court for just such a determination. *Id.*

In *Belleau v. Wall,* 811 F. 3d 929 (7th Cir. 2016), the United States Court of Appeals for the Seventh Circuit rejected a Fourth Amendment challenge to a Wisconsin law which required persons convicted of certain sex offenses to wear an electronic monitoring device for the rest of their lives. In so ruling, the Seventh Circuit read the United States Supreme Court's holding in *Grady* as concluding "that electronic monitoring of sex offenders is permitted if reasonable[,]." *Belleau,* 811 F. 3d at 932. The Seventh Circuit further concluded that "[H]aving to wear a GPS anklet monitor is less restrictive, and less invasive of privacy, than being in jail or prison, or for that matter civilly committed, which realistically is a form of imprisonment." *Id.* The Seventh Circuit suggested that such monitoring of convicted sex offenders was reasonable in light of the high recidivism rates of persons who have sexually molested children. *Id.* at 932-936. The Seventh Circuit concluded that the ankle monitoring of Mr. Belleau was reasonable. *Id.*

The United States Supreme Court has yet to hold that lifetime monitoring of convicted sex offenders amounts to an unreasonable search and seizure in violation of the Fourth Amendment. Where no precedent of the Supreme Court clearly forecloses a state court's ruling,

it cannot be considered an unreasonable application of Supreme Court precedent. *See Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016) (per curiam). In the absence of any clearly established law to the contrary, the Michigan Court of Appeals' rejection of the petitioner's Fourth Amendment claim does not entitle him to habeas relief.

Petitioner also argues that the imposition of lifetime electronic monitoring violates the Eighth Amendment ban against cruel and unusual punishment. However, as with his Fourth Amendment claim, the Supreme Court has yet to hold that lifetime electronic monitoring violates the Eighth Amendment. Therefore the state court's rejection of Petitioner's claim was not contrary to, or an unreasonable application of, clearly established federal law. *See Noonan v. Hoffner*, No. 1:14-CV-830, 2014 WL 5542745, at *6 (W.D. Mich. Oct. 31, 2014). Petitioner is not entitled to relief on his second claim.

### III.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at

336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

### IV.

Accordingly, it is it is **ORDERED**, that Petitioner Atkinson's petition for a writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED**, that a certificate of appealability is **DENIED**.

It is further **ORDERED**, that permission to appeal in forma pauperis is **DENIED**

                                                          s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge

Dated: November 15, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 15, 2016.

                                        s/Michael A. Sian
                                        MICHAEL A. SIAN, Case Manager